FILED by _____ D.C.
ELECTRONIC

APR. 17, 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

# 08-80403-CIV-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| IN RE: TRASYLOL PRODUCTS LIABILITY LITIGATION | MDL 1928 |
| This document relates to: | Judge Middlebrooks |
| **JUDY SHERMAN** and **ROBERT SHERMAN,** as successors in interest to **RUTHE SHERMAN,** deceased, | |
| Plaintiff, | |
| v. | |
| **BAYER CORPORATION** CORPORATION SERVICE COMPANY 1201 Hays Street Tallahassee, FL 32301 | **JURY TRIAL DEMANDED** |
| **BAYER PHARMACEUTICALS CORPORATION** CORPORATION SERVICE COMPANY 1201 Hays Street Tallahassee, FL 32301 | |
| **BAYER AG** Bayerwerk, Gebaude W11, Kaiser-Wilhelm-Allee 51368 Leverkusen, Germany | |
| **BAYER HEALTHCARE AG** Bayerwerk, Gebaude W11, Kaiser-Wilhelm-Allee 51368 Leverkusen, Germany | |
| Defendants. | |

## COMPLAINT

COMES NOW Plaintiff, and files this Complaint seeking judgment against

Defendants BAYER CORPORATION, BAYER PHARMACEUTICALS

CORPORATION, BAYER AG and BAYER HEALTHCARE AG (hereinafter

collectively referred to as "Bayer") and in support thereof states as follows:

### Jurisdiction and Venue

1.      Jurisdiction and venue are proper under the United States Constitution as well

as under Florida law regarding personal jurisdiction.  This court has jurisdiction over this

matter pursuant to 28 U.S.C. Section 1332, for diversity of citizenship and Plaintiff

claims an amount in controversy exceeding $75,000.00.

2.      Judy Sherman, an adult citizen and resident of Los Angeles County,

California, is the surviving daughter and successor in interest of the decedent, Ruthe

Sherman, and therefore has standing to bring this action pursuant to Cal. Code Civ. Pro.

§377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe

Sherman.

3.      Robert Sherman, an adult citizen and resident of Westchester County, New

York, is the surviving son and successor in interest of the decedent, Ruthe Sherman, and

therefore has standing to bring this action pursuant to Cal. Code Civ. Pro. §377.60(a),

California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

4.      Defendant BAYER CORPORATION maintains its principal place of

business in Crafton, Pennsylvania. Bayer Corporation is a corporation formed in the State

of Indiana with its principal place of business located at 100 Bayer Road, Crafton,

Pennsylvania 15205. It is a wholly owned subsidiary of Bayer A.G. Bayer Corporation

does business in and has substantial contacts with the State of Florida. At all times

material to this lawsuit, Bayer Corporation was engaged in the business of developing,

manufacturing, licensing, promoting, marketing, distributing, and/or selling in interstate

commerce and the State of Florida, either directly or indirectly, the pharmaceutical Trasylol, also known as Aprotinin.

5.      Defendant BAYER PHARMACEUTICALS CORPORATION is a division of Bayer Pharmaceutical Corporation, a wholly owned subsidiary of Bayer Corporation, with its principal place of business located at 400 Morgan Lane, West Haven, Connecticut, 06516. At all times material to this lawsuit, Bayer Pharmaceuticals Corporation was engaged in the business of developing, manufacturing, licensing, promoting, marketing, distributing, and/or selling in interstate commerce and the State of Florida, either directly or indirectly, the pharmaceutical Trasylol, also know as Aprotinin.

6.      Defendant BAYER A.G., a global diversified chemical company, is a German corporation with its principal place of business in Leverkusen, Germany. At all times relevant herein, Bayer A.G. was in the business of designing, testing, manufacturing, distributing and promoting certain pharmaceutical products, including Trasylol. Additionally, at all times relevant hereto, Bayer Corporation and Bayer A.G. shared many of the same officers and directors. Service on Bayer A.G. is being performed pursuant to the Hague Convention on service abroad.

7.      Defendant BAYER HEALTHCARE A.G., a global diversified chemical company, is a German corporation, with its principal place of business in Leverkusen, Germany. At all times relevant, Bayer Healthcare A.G. was in the business of designing, testing, manufacturing, distributing and promoting certain pharmaceutical products, including Trasylol. Additionally, at all times relevant, Bayer Corporation and Bayer Healthcare A.G. shared many of the same officers and directors. Service on Bayer Healthcare A.G. is being performed pursuant to the Hague Convention on service abroad.

### General Bayer Allegations

Plaintiff hereby incorporates by reference paragraphs 1 through 6 of this

Complaint and further states as follows:

### History of Trasylol

8.     Trasylol (also known as Aprotinin injection) is a naturally occurring

proteolytic enzyme inhibitor obtained from bovine lung. Aprotinin consists of 58 amino

acid residues. It is a single-chain polypeptide, consisting of 6512 daltons and is cross-

linked by three disulfide bridges.  The reactive bond site for Aprotinin is lysine – 15 –

alanine – 16, and it forms reversible stoichiometric complexes.

9.     Aprotinin reacts with the serine site of the enzyme.

10.    Aptrotinin was discovered in the 1930s when Kraut, et al. isolated a kallikrein

inhibitor from bovine lung.

11.    Aprotinin was launched as Trasylol in Germany in 1959.

12.    Trasylol was approved by the FDA in 1993 and is used to control bleeding in

Coronary Artery Bypass Grafting (hereinafter referred to as "CABG") surgeries as well

as other surgeries.  It is supplied as a clear, colorless, sterile isotonic solution for

intravenous administration.

13.    Trasylol is indicated for prophylactic use to reduce perioperative blood

loss and the need for blood transfusion in patients undergoing cardiopulmonary bypass in

the course of CABG procedures.

14.    Trasylol is a broad-spectrum protease inhibitor, which modulates the systemic

inflammatory response associated with cardiopulmonary bypass surgery. The effects of

Trasylol use in cardiopulmonary bypass surgery involve a reduction in inflammatory

response, which translates into a decreased need for allogenic blood transfusions and reduced bleeding.

15.     The following is the warning carried by Trasylol prior to the FDA Advisory Board Committee Meeting: "Anaphylactic or anaphylactoid reactions are possible when Trasylol® is administered. Hypersensitivity reactions are rare in patients with no prior exposure to aprotinin. The risk of anaphylaxis is increased in patients who are re-exposed to aprotinin-containing products. The benefit of Trasylol® to patients undergoing primary CABG surgery should be weighed against the risk of anaphylaxis should a second exposure be required."

16.     All patients should first receive a test dose of Trasylol. This should be administered intravenously at least 10 minutes before the loading dose.

17.     After induction of anesthesia but prior to sternotomy, the loading dose of Trasylol is given to patients intravenously in the supine position, and is administered slowly over 20-30 minutes.

18.     Patients are also given a "pump-prime" dose, which is added to the priming fluid of the cardiopulmonary bypass circuit, by replacement of an aliquot of priming fluid, prior to institution of the cardiopulmonary bypass.

19.     Patients are also given a constant infusion dose, which is administered when the loading dose is complete. This dose continues until surgery is complete and the patient leaves the operating room.

20.     Trasylol inhibits pro-inflammatory cytokine release and maintains glycoprotein homeostasis.

21.     According to Bayer, since its approval, an estimated 4.3 million patients

have been given Trasylol.

22.     Bayer estimated that Trasylol generated about $293 million in sales in 2005 alone, making it the company's 11th largest-selling drug.

23.     In late 2005, Bayer forecast that Trasylol would someday generate upwards of $600 million annually.

**Trasylol's Association With the Increased Risk of
Renal Failure, Heart Attack and Stroke**

24.     On January 20, 2006, Transfusion, on-line edition, published an article suggesting an association between Trasylol administration and renal toxicity among patients undergoing cardiac surgery with cardiopulmonary bypass. This study was an observational study that used statistical methodology to compare outcomes from patients undergoing CABG.

25.     On January 26, 2006, The New England Journal of Medicine (NEJM) published an article by Mangano, et al. reporting an association of Trasylol with serious renal toxicity and ischemic events, including heart attack and stroke in patients undergoing coronary artery bypass grafting surgery. This study was an observational study of patients undergoing CABG who received either Trasylol, one of two alternative drugs intended to decrease perioperative bleeding (aminocaproic acid or tranexamic acid), or no specific drug treatment.

26.     The FDA evaluated these studies, along with other studies in the literature and reports submitted to the FDA through the MedWatch program, to determine if labeling changes or other actions were warranted.

27.     While the FDA was continuing its evaluation it provided the following recommendations to healthcare providers and patients:

Physicians who use Trasylol should carefully monitor patients for the occurrence of toxicity, particularly to the kidneys, heart, or central nervous system and promptly report adverse event information to Bayer, the drug manufacturer, or to the FDA MedWatch program, as described at the end of this advisory.

Physicians should consider limiting Trasylol use to those situations where the clinical benefit of reduced blood loss is essential to medical management of the patient and outweighs the potential risks.

### FDA September 21, 2006 Advisory Board Committee Meeting and the Walker Study

28.     Bayer had a duty to abide by the laws and regulations of the United States including, but not limited to the following: 21 CFR §330.10(a)(4)(v) (Labeling); 21 CFR § 369.10 (Labeling); 21 CFR §§ 201.56 and 201.57 (d), (e) and (f) (Labeling); 21 CFR 1.21 (a) (Labeling); 21 CFR 600.80 (Post-marketing Reporting of Adverse Experiences); 21 CFR §314. 50 (Post Marketing Reports of Adverse Drug Experiences), as well as regulations relating to the promotion of drugs for unlabeled uses.

29.     The FDA Advisory Board Committee convened on September 21, 2006 to discuss its findings regarding the safety of Trasylol and to determine whether the warning on Trasylol needed to be changed.

30.     After reviewing what it considered to be all of the available data on the safety of Trasylol, the 19-member advisory panel recommended to the FDA that Bayer didn't need to strengthen a warning to doctors about the drug.

31.     Just days later, the FDA was contacted by Alexander Walker, a professor at Harvard's School of Public Health, about a 67,000 patient-study he helped conduct at Bayer's request.

32.     Bayer knew of this data and failed to disclose this data, from its own research,

to the FDA at the September 21, 2006 Advisory Board Committee meeting. This data confirmed that Trasylol increased the risk of renal failure, heart attack, and stroke. This study, conducted at the request of Bayer, examined hospital records of 67,000 patients undergoing CABG surgery. The study suggests that the patients who received Trasylol were at an increased risk for death, kidney failure, congestive heart failure, and stroke.

33.     Since this nondisclosure was unearthed, Bayer has suspended two of its employees.

## FDA Revises Labeling for Trasylol on December 15, 2006

34.     Following the FDA-conducted review of safety information that began in January 2006, the FDA approved a revision in the Trasylol label.

35.     On December 15, 2006 the U.S. Food and Drug Administration approved revised labeling for Trasylol.

36.     The revised label strengthened Trasylol's safety warnings and limited Trasylol's approved usage to very specific situations.

37.     The new labeling specifies that Trasylol should only be given to patients who are at an increased risk for blood loss and blood transfusion in the setting of coronary bypass graft surgery when patients undergo cardiopulmonary bypass.

38.     The changes also include a warning that Trasylol increases the possible risk for kidney damage, and suggest ways to manage and reduce the patient's risk for hypersensitivity reactions.

## Bayer Discontinues Trasylol Clinical Trials

39.     On January 25, 2007, Bayer announced it was discontinuing three clinical

studies for Trasylol.

40.     The studies were to investigate the safety and efficacy of Trasylol on

transfusion requirements and blood loss in adults undergoing spinal fusion surgery,

pneumonectomy or esophagectomy for cancer, and total cystectomy in bladder cancer, all

off-label uses.

<u>**General Allegations Concerning Plaintiff and Plaintiff's Damages**</u>

Plaintiff incorporates by reference the paragraphs of this Complaint and further

states as follows:

41.     On or about July 7, 2004, Ruthe Sherman underwent open heart surgery

at Los Angeles Medical Center in Los Angeles, California.

42.     With no contributory negligence on her part, Ruthe Sherman was

administered Trasylol, a pharmaceutical product designed, manufactured, promoted,

distributed and sold by Bayer.

43.     As a direct, proximate, and legal result of the negligence, carelessness, and

other wrongdoing of Bayer, as described herein, Ruthe Sherman began experiencing

renal insufficiency and renal failure on or about July 8, 2004.

44.     As a direct, proximate, and legal result of the negligence, carelessness, and

other wrongdoing of Bayer, as described herein, Ruthe Sherman was placed on dialysis

on or about July 10, 2004.

45.     As a direct, proximate, and legal result of the negligence, carelessness, and

other wrongdoing of Bayer, as described herein, Ruthe Sherman began experiencing

encephalopathy on or about July 12, 2004.

46.     As a direct, proximate, and legal result of the negligence, carelessness and

other wrongdoing of Bayer, as described herein, Ruthe Sherman died on or about August 2, 2004.

**COUNT I**
**Strict Products Liability-Failure to Warn**

Comes now Plaintiff and for Count I of this Complaint against Bayer, alleges:

47.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

48.    Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, brings Count I of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

49.    Plaintiffs have standing to prosecute this wrongful death action pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute.

50.    Bayer owed Ruthe Sherman a duty of reasonable care to adequately warn her of the risks associated with the use of Trasylol.

51.    Bayer knew or reasonably should have known that the warnings provided to users of Trasylol regarding the risks associated with its use were incorrect and misleading in at least the following material respects:

a.    Trasylol was unaccompanied by proper warnings regarding all possible side effects associated with its use and the comparative severity, incidence, and duration of such adverse effects; and

b.    Trasylol was defective due to inadequate post-marketing warnings or

instructions, because Bayer failed to provide adequate warnings to users or consumers and continued aggressively to promote Trasylol, even after it knew or should have known of the risks of injury from this drug; and

   c. Trasylol was unaccompanied by proper warnings regarding renal failure caused by Trasylol and Bayer continued to aggressively promote Trasylol, even after it knew or should have known of the risk of renal failure from this drug; and

   d. Trasylol was unaccompanied by proper warnings regarding heart attack caused by Trasylol and Bayer continued to aggressively promote Trasylol, even after it knew or should have known of the risk of heart attack from this drug; and

   e. Trasylol was unaccompanied by proper warnings regarding stroke caused by Trasylol and Bayer continued to aggressively promote Trasylol, even after it knew or should have known of the risk of stroke from this drug; and

   f. Bayer failed to warn that there were other drugs available that did not have the same risks as Trasylol.

  52. By failing to warn Ruthe Sherman and cardiac surgeons of the adverse health risks associated with the administration of Trasylol, Bayer breached its duty to Ruthe Sherman of reasonable care and safety.

  53. As a direct and proximate result of Bayer's failure to adequately warn Plaintiff of the risks associated with the use of Trasylol, Plaintiff suffered and continues to suffer the injuries and damages set forth in this Complaint.

**COUNT II**
**Strict Products Liability-Design Defect**

  Comes now Plaintiff and for Count II of this complaint against Bayer alleges:

  54. Plaintiff incorporates by reference the allegations contained in the preceding

55038.1

paragraphs as if fully set forth herein.

55.     Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count II of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

56.     At all times material to this lawsuit, Bayer manufactured Trasylol.

57.     At all times material to this lawsuit, Bayer was engaged in the business of distributing and selling Trasylol.

58.     Bayer sold the Trasylol, which was administered to Ruthe Sherman during her cardiac surgery, as alleged in this Complaint.

59.     The Trasylol administered to Ruthe Sherman was defective and, because of its defects, was unreasonably dangerous to persons who might reasonably be expected to require its use. In addition, this drug was dangerous to the extent beyond that which could reasonably be contemplated by Ruthe Sherman.  Any benefit of Trasylol was far outweighed by the serious and undisclosed risks of its use, and other drugs performed the same function without the increased risks of Trasylol.

60.     The Trasylol administered to Ruthe Sherman was defective at the time it was distributed by Bayer or left its control.

61.     The Trasylol administered to Ruthe Sherman was expected to reach the user without substantial change in the condition in which it was sold.

62.     The Trasylol administered to Ruthe Sherman reached her without substantial change in the condition in which it was sold.

63.     Ruthe Sherman was a person who would reasonably be expected to use Trasylol.

64.     The defects in the Trasylol administered to Ruthe Sherman were a direct and proximate cause of the injuries and damages sustained by Plaintiff as set forth in this Complaint.

## COUNT III
### Negligent Failure To Warn

Comes now Plaintiff and for Count III of this complaint against Bayer alleges:

65.     Plaintiff incorporates all allegations in the preceding paragraphs as if fully set forth in this Count.

66.     Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count III of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

67.     Bayer owed a duty to warn of any dangerous defects or side effects; a duty to assure its product did not cause users unreasonable and dangerous risks, reactions, and side effects; and a duty to provide adequate post market surveillance and warnings as it learned of Trasylol's substantial dangers.

68.     Bayer breached its duty of reasonable care to Ruthe Sherman in the following material respects:

    a.   Trasylol was unaccompanied by proper warnings regarding all possible side effects associated with its use and the comparative severity, incidence, and duration of such adverse effects; and

    b.   Trasylol was defective due to inadequate post-marketing warnings or

instructions, because Bayer failed to provide adequate warnings to users or consumers and continued aggressively to promote Trasylol, even after it knew or should have known of the risks of injury from this drug; and

   c. Trasylol was unaccompanied by proper warnings regarding renal failure caused by Trasylol and Bayer continued to aggressively promote Trasylol, even after it knew or should have known of the risk of renal failure from this drug; and

   d. Trasylol was unaccompanied by proper warnings regarding heart attack caused by Trasylol and Bayer continued to aggressively promote Trasylol, even after it knew or should have known of the risk of heart attack from this drug; and

   e. Trasylol was unaccompanied by proper warnings regarding stroke caused by Trasylol and Bayer continued to aggressively promote Trasylol, even after it knew or should have known of the risk of stroke from this drug; and

   f. Bayer failed to warn that there were other drugs available that did not have the same risks as Trasylol.

  69. Bayer should have known that Trasylol caused unreasonably dangerous risks and serious side effects of which the general public would not be aware. Bayer nevertheless advertised, marketed and promoted its product knowing there were safer products on the market.

  70. As a direct and proximate result of Bayer's negligence and breaches of its duty of reasonable care, Plaintiff has been damaged.

**COUNT IV**
**Negligent Design**

  Comes now Plaintiff and for Count IV of this complaint against Bayer alleges:

  71. Plaintiff incorporates all allegations in the preceding paragraphs as if fully set

forth in this Count.

72.     Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count IV of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

73.     Defendant Bayer designed, produced, manufactured and injected into the stream of commerce, in the regular course of its business, the pharmaceutical drug Trasylol, which it knew would be used by Ruthe Sherman and others.

74.     At the time Trasylol was manufactured and sold to Ruthe Sherman by Bayer, it was defective in design and unreasonably dangerous, subjecting users to risks of renal failure, heart attacks, strokes, and other illnesses which exceeded the benefits of the products, and for which other safer products were available.

75.     Alternatively, when Trasylol was manufactured and sold to Ruthe Sherman by Bayer, the product was defective in design and formulation, making use of the product more dangerous than other drugs for its intended use.

76.     The Trasylol sold to Ruthe Sherman reached her without substantial change. Ruthe Sherman was unaware of the dangerousness of the product until after its use. Ruthe Sherman was administered the Trasylol without making any changes or alterations.

77.     In designing and testing Trasylol, Bayer failed to exercise the ordinary care that a careful and prudent drug manufacturer would exercise in the same or similar circumstances.

78.     As a direct and proximate result of the negligent design of Trasylol, Plaintiff has been damaged.

79.    Bayer's conduct was done with conscious disregard for the safety of users of Trasylol, including Ruthe Sherman, justifying an award of punitive damages.

## COUNT V
## Negligence

Comes now Plaintiff and for Count V of this complaint against Bayer alleges:

80.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

81.    Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count V of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

82.    At all times material to this lawsuit, Bayer owed Ruthe Sherman a duty of reasonable care and safety.

83.    Bayer's duties included, but were not limited to, carefully and properly designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing Trasylol into the stream of commerce, and providing warnings with regard to this drug.

84.    Bayer negligently and carelessly breached the above-described duties to Ruthe Sherman by committing negligent acts and/or omissions including, but not limited to:

a.    Bayer failed to use ordinary care in designing, testing, and manufacturing Trasylol so as to avoid the high risk to users of unreasonable, dangerous side effects, some of which are fatal;

b.    Bayer failed to accompany Trasylol with adequate warnings that would

55038.1

alert doctors, consumers, and other users to the potential adverse side effects associated with the use of this drug and the nature, severity and duration of such adverse effects;

      c.  Bayer failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Trasylol;

      d.  Bayer failed to warn Ruthe Sherman prior to actively encouraging the sale of Trasylol, either directly or indirectly, orally or in writing, about the possibility of becoming disabled as a result of the use of these drugs;

      e.  Bayer continued to promote the safety of Trasylol, while downplaying any risks, even after Bayer knew of the risks; and

      f.  Bayer was otherwise careless or negligent.

85.    Although Bayer knew or should have known that Trasylol caused unreasonably dangerous side effects which many users would be unable to remedy by any means, Bayer continued to market this drug to doctors for use in cardiac surgeries, when there were safer and less expensive alternatives available.

86.    In addition, Bayer had a legal duty to comply with the U.S. Food, Drug and Cosmetic Act, U.S. Code § 21 USC §301, et seq., and. regulations promulgated there under.

87.    Bayer negligently and carelessly violated the laws and regulations of the United States including, but not limited to the following: 21 CFR §330.10(a)(4)(v) (Labeling); 21 CFR § 369.10 (Labeling); 21 CFR §§ 201.56 and 201.57 (d), (e) and (f) (Labeling); 21 CFR 1.21 (a) (Labeling); 21 CFR 600.80 (Post-marketing Reporting of Adverse Experiences); 21 CFR §314. 50 (Post Marketing Reports of Adverse Drug

Experiences), as well as regulations relating to the promotion of drugs for unlabeled uses. The violations of those and other statutes and regulations constitute negligence per se.

88.     Bayer knew or should have known that consumers like Ruthe Sherman would suffer injury as a result of Bayer's failure to exercise ordinary care, as described above.

89.     As a direct and proximate cause of Bayer's negligent acts and/or omissions, Plaintiff suffered, and continues to suffer from, each of the injuries and damages set forth in this Complaint.

## COUNT VI
## Fraudulent Concealment

Comes now Plaintiff and for Count VI of this complaint against Bayer alleges:

90.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

91.     Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count VI of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

92.     Bayer concealed and continues to conceal past and present facts from the consuming public, including Ruthe Sherman, which it had a duty to disclose.

93.     The facts concealed and not disclosed include, but are not limited to, those set forth in the general allegations section of this Complaint.

94.     Each of the facts concealed and not disclosed was material.

95.     Bayer concealed and continued to fail to disclose material facts to the consuming public with the intent that the consuming public, like Ruthe Sherman, would take a course of action that it would otherwise not have taken if it had been informed of

the actual facts known to Bayer, including the totality of the risks associated with the use of Trasylol.

96.     Ruthe Sherman took such action relying on the assumption that the undisclosed facts did not exist and/or were different than they actually were.

97.     The reliance of Ruthe Sherman was justified.

98.     As a result of Ruthe Sherman's reliance on the incomplete and inaccurate information communicated by Bayer and Ruthe Sherman's assumption that the non-disclosed facts about the risks associated with the use of Trasylol did not exist, Plaintiff suffered the injuries and damages alleged in this Complaint.

**COUNT VII**
**Common Law Fraud**

Comes now Plaintiff and for Count VII of this complaint against Bayer alleges:

99.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

100.    Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count VII of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

101.    At all relevant times herein, Bayer was in the business of manufacturing, promoting, advertising, selling and distributing Trasylol.

102.    Through its actions and omissions in advertising, promoting, reporting to the FDA, labeling, and otherwise, Bayer made public misrepresentations of material facts to, and/or concealed material facts from physicians, the FDA, and consumers like Ruthe Sherman, concerning the character and safety of Trasylol.

55038.1

103.    Those public misrepresentations and omissions include, but are not limited to those set forth in the general allegations section of this Complaint. Those false representations and omissions include but are not limited to the following:

a.    Bayer failed to disclose that sufficient pre-clinical and clinical testing and adequate post-marketing surveillance to determine the safety and side effects of Trasylol had not been done;

b.    Bayer failed to timely disclose, and/or intentionally concealed, the interim and final results of the Walker Study showing that Trasylol use dramatically increased the risk for renal failure, heart attack and stroke; and

c.    Bayer failed to include adequate warnings with Trasylol about the potential and actual risks, and nature, scope, severity, and duration of any serious side effects of this drug, including without limitation, the risk of hemorrhagic stroke.

104.    Bayer was obligated to disclose the foregoing risks, but failed to adequately and timely do so even after it was in possession of information concerning those risks. Bayer's representations that Trasylol was safe for its intended use were false, since this drug was, in fact, dangerous to the health of Ruthe Sherman when used to reduce perioperative bleeding in patients undergoing surgery, and there were alternative products available that were less expensive, equally as effective and posed less risk.

105.    In the alternative, Bayer failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Trasylol and communicating that information to Ruthe Sherman.

106.    Ruthe Sherman was not aware of the falsity of the foregoing representations, nor was she aware that material facts concerning Trasylol had been concealed or omitted.

55038.1

In reliance upon Bayer's misrepresentations, Ruthe Sherman's surgeon was induced to and did administer Trasylol to Ruthe Sherman for her surgery. If Ruthe Sherman had known the true facts concerning the risks of the use of Trasylol, she would have requested Trasylol not be used in her surgery, and requested the use of one of the safer alternatives.

107.    Ruthe Sherman's and her doctor's reliance upon Bayer's misrepresentations was justified, among other reasons, because these misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning Trasylol, while Ruthe Sherman was not in a position to know the true facts. In addition, Bayer aggressively marketed the use of this drug while downplaying the risks in its use, thereby inducing Ruthe Sherman's surgeon to use this drug, instead of other, safer alternatives.

108.    At all times relevant, Bayer's corporate officers, directors and/or managing agents knew of and ratified the acts of Bayer, as alleged herein.

109.    As a direct and proximate result of Ruthe Sherman's and her surgeon's reliance on Bayer's misrepresentations concerning the risks and benefits of Trasylol, Plaintiff suffered and continues to suffer from the injuries and damages as set forth in this Complaint.

## COUNT VIII
## Breach Of Implied Warranty

Comes now Plaintiff and for Count VIII of this complaint against Bayer alleges:

110.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

55038.1

111.    Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count VIII of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

112.    Trasylol, which was designed, tested, manufactured, distributed, promoted and sold by Bayer, was expected to, and did, reach Ruthe Sherman without a substantial change in its condition.

113.    Bayer, through its advertising and promotional materials, impliedly warranted that Trasylol was safe for the use for which it was intended, namely as a means to reduce perioperative bleeding in patients undergoing surgery.

114.    Bayer breached these implied warranties in that Trasylol was unsafe in light of the risk of life-threatening side effects associated with its use, including, but not limited to, renal failure.

115.    Ruthe Sherman relied to her detriment on Bayer's implied warranties.

116.    As a direct and proximate result of Bayer's breach of implied warranties, Plaintiff suffered and continues to suffer from the injuries and damages set forth in this Complaint.

### COUNT IX
### Breach Of Express Warranty

Comes now Plaintiff and for Count IX of this complaint against Bayer alleges:

117.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

118.    Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count IX of this complaint pursuant to Cal. Code Civ. Pro.

§377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

119.   Trasylol, which was designed, tested, manufactured, distributed, promoted and sold by Bayer, was expected to, and did, reach Ruthe Sherman without a substantial change in its condition.

120.   Bayer, through its advertising and promotional materials, expressly warranted that Trasylol was safe for the use for which it was intended, namely as a means to reduce perioperative bleeding in patients undergoing surgery.

121.   Bayer breached these express warranties in that Trasylol was unsafe in light of the risk of life-threatening side effects associated with its use, including, but not limited to, renal failure.

122.   Ruthe Sherman relied to her detriment on Bayer's express warranties.

123.   As a direct and proximate result of Bayer's breach of express warranties, Plaintiff suffered and continues to suffer from the injuries and damages set forth in this Complaint.

### COUNT X
### Negligent Misrepresentation

Comes now Plaintiff and for Count X of this complaint against Bayer alleges:

124.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

125.   Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count X of this complaint pursuant to Cal. Code Civ. Pro. §377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe Sherman.

126.    Bayer knew, or should have known, that there were dangerous side effects resulting from the use of Trasylol.

127.    Bayer knew or reasonably should have known that consumers such as Ruthe Sherman would not have known about the increased risk of renal failure, heart attack, and stroke, among other things, associated with Trasylol.

128.    Bayer, armed with the knowledge stated in the preceding two paragraphs, proceeded with the design, production, manufacture, promotion, advertising, and sale of Trasylol without adequate warning of the side effects and dangerous risks to the consuming public, including Ruthe Sherman.

129.    Bayer negligently represented to Ruthe Sherman the safety and effectiveness of Trasylol and concealed material information, including adverse information regarding the safety and effectiveness of Trasylol. The misrepresentations and/or material omissions made by or perpetuated by Bayer are as follows:

        a.   Bayer failed to conduct sufficient testing which, if properly performed,

would have shown that Trasylol had serious side effects, and warn users of those risks; and/or

        b.   Include adequate warnings with Trasylol that would alert users to the potential risks and serious side effects of Trasylol as well as the limited benefits and the approved uses; and/or

        c.   Warn Ruthe Sherman that use of Trasylol carried a risk of death or permanent injury from renal failure, heart attack, stroke, and other serious side effects; and/or

d.  Advise the FDA, the health care industry, and the public about the adverse reports it had received regarding Trasylol.

130.   Bayer made the misrepresentations and omissions with the intent that Ruthe Sherman and the consuming public rely upon such information or the absence of such information in selection of Trasylol.

131.   Ruthe Sherman justifiably relied on and/or was induced by the misrepresentations and/or active concealment by Bayer and relied upon the absence of safety information which Bayer suppressed, concealed, or failed to disclose, all to her detriment.

132.   As a direct and proximate result of the dangerous and defective condition of Trasylol, Ruthe Sherman was injured, and incurred economic damages in the form of medical expense.

133.   Plaintiff is entitled to recover from Bayer for all damages caused by the

defective product including, but not limited to, damages for pain, suffering, loss of the capacity to enjoy life, lost past and future income and occurred expense.

**COUNT XI**
**Violation Of Deceptive Trade Practices Act**

Comes now Plaintiff and for Count XI of this complaint against Bayer alleges:

134.   Plaintiff incorporates all allegations in the preceding paragraphs as if fully set forth in this Count.

135.   Judy Sherman and Robert Sherman, individually and as successors in interest to Ruthe Sherman, bring Count XI of this complaint pursuant to Cal. Code Civ. Pro.

§377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe
Sherman.

136.    Plaintiff brings this action pursuant to California Civil Code § 1750 et seq.
(The California Consumers Legal Remedies Act), in that Ruthe Sherman purchased and
used Trasylol for personal use and thereby suffered ascertainable loss as a result of
Bayer's actions in violation of the California Deceptive Trade Practices Act.

137.    Unfair or deceptive acts or practices are defined and declared unlawful in
California.  The unfair or deceptive acts or practices as defined in the statute include, "the
use of any deception, fraud, false pretense, false promise, misrepresentation or
concealment, suppression or omission of any material fact in connection with the sale or
advertisement of any merchandise in trade or commerce."

138.    Bayer violated the Act by its use of false and misleading misrepresentations or
omissions of material fact in connection with the sale of Trasylol.  Bayer communicated
the purported benefits of Trasylol, while failing to disclose the serious and dangerous side
effects related to the use of its product, and in fact actually concealing from health care
providers the adverse effects of Trasylol.

139.    As a result of violating the California Deceptive Trade Practices Act, Bayer is
liable to Plaintiff for actual damages, costs and reasonable attorneys' fees, and for such
additional relief as the Court may deem appropriate.

## COUNT XII
## Punitive Damages

Comes now Plaintiff and for Count XII of this complaint against Bayer alleges:

140.    Plaintiff incorporates by reference the allegations contained in the preceding

paragraphs as if fully set forth herein.

141.     Judy Sherman and Robert Sherman, individually and as successors in interest
to Ruthe Sherman, bring Count XII of this complaint pursuant to Cal. Code Civ. Pro.
§377.60(a), California's Wrongful Death statute, for the wrongful death of Ruthe
Sherman.

142.     The conduct of Bayer in designing, testing, manufacturing, promoting,
advertising, selling, marketing, and distributing Trasylol, and in failing to warn Ruthe
Sherman and other members of the public of the dangers inherent in the use of Trasylol,
which were well known to Bayer, was attended by circumstances of fraud, malice, or
willful and wanton conduct, done heedlessly and recklessly, without regard to
consequences, or of the rights and safety of others, particularly Ruthe Sherman. Such
conduct includes, but is not limited to the following:

        a.   Upon information and belief, Bayer actually knew of Trasylol's defective
nature, as set forth herein, but continued to design, manufacture, market, and sell Trasylol
so as to maximize sales and profits at the expense of the health and safety of the
consuming public, including Ruthe Sherman, and in conscious disregard of the
foreseeable harm caused by Trasylol;

        b.   Bayer, which spent millions of dollars a year researching and developing
medicines, and aggressively marketing Trasylol, devoted far less attention to conducting
sufficient pre-clinical and clinical testing and adequate post-marketing surveillance of
this drug;

        c.   Bayer continued to promote the safety of Trasylol, while providing to

WHEREFORE, Plaintiff prays for judgment against Defendant Bayer Corporation, on grounds set forth in Counts I through XI, in the amount of compensatory damages in excess of $75,000 in an amount to be determined by the jury and a fair and just amount of punitive damages in an amount to be determined by the jury, plus costs and attorney's fees, and for such other and further damages and relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Respectfully Submitted,

George, Hartz, Lundeen

By: _____

Mitchell L. Lundeen
Florida Bar Number: 253952
4800 LeJeune Road
Coral Gables, Florida 33146
Telephone: 305-662-4800

CAREY & DANIS, LLC
John J. Carey  #2782 E.D. MO
8235 Forsyth Boulevard, Suite 1100
St. Louis MO 63105
Telephone: 314-725-7700
Facsimile: 314-721-0905

THE LOWE LAW FIRM
Jeffrey J. Lowe #10538 E.D. MO
8235 Forsyth Boulevard, Suite 1100
St. Louis MO 63105
Telephone: 314-678-3400
Facsimile: 314-678-3401

Counsel for Plaintiff

55038.1

# CIVIL COVER SHEET

%JS 44 (Rev. 11/05)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
Judy Sherman

### DEFENDANTS
See attached

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John J. Carey, Carey & Danis, 8235 Forsyth Blvd Ste 1100, 314.725.7700-Jeffrey J. Lowe, The Lowe Law Firm, 8235 Forsyth Blvd Ste 1100, 314.678.3400

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*WPB = 08CV80403 Tammi Johnson*

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

*DC   APR 17 2008   STEVEN M. LARIMORE CLERK U.S. DIST CT S.D. OF FLA. W.P.B.*

## V. ORIGIN (Place an "X" in One Box Only)
☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☑ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☑ YES ☐ NO
JUDGE
DOCKET NUMBER MDL 1928

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 USC 1332
LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE 4-16-08

FOR OFFICE USE ONLY
AMOUNT $350.00 RECEIPT # 978819
04/17/08

29 of 29